IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RICHARD TOMMY GORDON                                                    PETITIONER

VS.                          CASE NO. 5:14CV00456 KGB/PSH

WENDY KELLEY, Director of the
Arkansas Department of Correction                                       RESPONDENT


**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following Proposed Findings and Recommendations have been sent to United States District Court Judge Kristine G. Baker. You may file written objections to all or part of these Recommendations. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of these Recommendations. By not objecting, you may waive the right to appeal questions of fact.


**DISPOSITION**

Richard Tommy Gordon ("Gordon") seeks a writ of habeas corpus pursuant to 28 U.S.C. §2254. He is currently in the custody of the Arkansas Department of Correction (ADC). On July 14, 2011, Gordon was convicted of first degree murder following a jury trial in Stone County Circuit Court. He was sentenced to life imprisonment, with an additional enhancement of 180 months for use of a firearm when committing the murder. On direct appeal, Gordon contended the trial court erred in the following decisions: (1) admitting the evidence of a jailhouse fight in the state's rebuttal case; and (2) limiting the testimony of his expert witness. On October 25, 2012, the Supreme Court of Arkansas affirmed the conviction. *Gordon v. State*, 2012 Ark. 398. Gordon did not timely file

a Rule 37 petition. On February 8, 2014, he filed a Motion for Coram Nobis Relief, and on February 13, 2014, he filed a motion to file a belated Rule 37 petition. Both of these motions were filed with the assistance of counsel, and they were summarily denied on March 13, 2014, by the Supreme Court of Arkansas.

Gordon's petition for federal habeas corpus, signed on December 7, 2014, and filed on December 29, 2014, advances the following claims for relief:

1. He was denied the effective assistance of counsel at trial because his attorney failed to investigate allegations regarding how the sheriff treated Gordon's wife and his trial counsel was incoherent; and

2. He was denied the effective assistance of counsel on appeal because his attorneys[1] failed to investigate and gave bad advice.

Respondent Wendy Kelley ("Kelley") contends that the statute of limitations and the doctrine of procedural default bar consideration of all of the claims. By Order of the Court dated February 5, 2015, Gordon was notified of his opportunity to address the statute of limitations argument. He did so. *See Docket entry no. 9.* By Order of the Court dated March 24, 2015, Gordon was given an additional thirty days to provide more information on the issue of equitable tolling of the limitations period. He filed a responsive pleading. *See Docket entry no. 16.* Prior to addressing the merits of any claims, we first consider if the petition for writ of habeas corpus is properly before the Court.

**Statute of Limitations:** Section 101 of 28 U.S.C. §2244 (as amended) imposes a one year period of limitation on petitions for writ of habeas corpus:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct

---

[1] Gordon faults his attorney of record on direct appeal, Craig Lambert, as well as Potter Law Firm, hired to file a Rule 37 Petition on Gordon's behalf, and T.H. Johnson, hired to file a Petition for Writ of Error Coram Nobis and Belated Rule 37 Petition. *See Docket entry no. 2, page 16.*

> review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Kelley contends that Gordon's direct appeal concluded on October 25, 2012, and he was allowed ninety days from then in which to file a petition for writ of certiorari. Thus, according to Kelley, Gordon's conviction became final on January 23, 2013. *See Williams v. Bruton*, 299 F.3d 981 (8th Cir. 2002). Gordon signed his habeas corpus petition on December 7, 2014. Though the current petition was not filed until December 29, 2014, for purposes of limitations calculation we use the date the petition was signed and presumably delivered to prison authorities. This is in accord with the "prisoner mailbox rule" as described in *Houston v. Lack*, 487 U.S. 266, 272 (1988), and codified in Rule 3 of the Rules Governing Section 2254 Cases in the United States District Courts. If the conviction was final on January 23, 2013, and the petition filed on December 7, 2014, the petition was filed more than ten months after the one year limitation period expired. In addition, Gordon did not file any collateral petitions in state court on or before January 24, 2014. The state coram nobis petition and request for permission to file a belated Rule 37 were filed in February of 2014. Therefore, even if we assume that these state court filings were "properly filed" petitions as defined by 28 U.S.C. § 2244(2), "there was no federal limitations period remaining to toll." *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001).

Gordon, in his responsive pleading, contends ineffective assistance of counsel should excuse the failure to file a timely petition. He submits a great deal of correspondence from the various

attorneys he employed to support his position.[2] He also claims there was no lack of diligence on his part in pursuing federal habeas corpus relief, alleging that pursuant to *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1913 (2013), the limitations period was equitably tolled. For these reasons, he insists his petition should not be dismissed as time-barred. *See Docket entry no. 16.*

This case is unusual in that Gordon was represented by counsel in state court proceedings after his direct appeal was concluded. Based on correspondence with the attorneys provided by Gordon, there appears to be some question whether Gordon was adequately represented in relation to post-conviction matters. For example, in May of 2013, Gordon's wife inquired of one attorney about deadlines that may be impending. *Docket entry no. 16, page 38.* In August of 2013, the attorney e-mailed Ms. Gordon that he planned to "visit your husband next week and hopefully have our motions filed by the end of next week." *Docket entry no. 16, page 44.* On December 19, 2013, Ms. Gordon e-mailed the attorney, asking "When is the deadline for filing Rick's habeas corpus with the federal court? We have heard that it is one year from the time October 2012 that we received an answer to the appeal." The attorney disagreed with Ms. Gordon, noting that "habeus (sic) actions are filed after all state remedies have been exhausted." *Docket entry no. 16, page 48.* The state motions were eventually filed in February of 2014, well after the deadline for a Rule 37 petition to be filed in state court, and also after the deadline for filing of a petition for federal habeas relief. In April of 2014, the attorney wrote Gordon, noting optimism about a federal habeas corpus petition, proposing a $12,500.00 fee, and stating the following: "It is my opinion that you should file a Habeus (sic) action as soon as possible. There are time limitations, but I also feel there are issues regarding the 'tolling' of the time due to the failure of the Potter law office to file your Rule 37 Action and the exhaustion of your State Action remedies." *Docket entry no. 16, pages 50-51.*

---

[2]Gordon was represented in his first trial, which resulted in a hung jury, by Jeff Rosenzweig. He was represented in his second trial, which resulted in his conviction, by Larry Froelich. He was represented in his direct appeal by Craig Lambert. The Potter Law Firm was then hired to file a Rule 37 petition, and T.H. Johnson was hired to file a petition for error coram nobis and a request to file a belated Rule 37 petition.

The failure to file a timely petition can be excused under some circumstances:

> Equitable tolling is appropriate where extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time, or where a defendant's conduct lulls the prisoner into inaction. *Id.* The doctrine applies "only when some fault on the part of the defendant has caused a plaintiff to be late in filing, or when other circumstances, external to the plaintiff and not attributable to his actions, are responsible for the delay." *Flanders v. Graves,* 299 F.3d 974, 977 (8th Cir.2002). Equitable tolling is an "exceedingly narrow window of relief." *(Citation omitted).*

*Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir. 2005).

Typically, a petitioner represented by counsel in post-conviction proceedings bears the risk of any attorney error. This is so because there is no constitutional right to counsel in such post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722 (1991). However, the United States Supreme Court, in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1913 (2013), has limited *Coleman*. The extent of the limitation on *Coleman* is not yet clear. For the purposes of Gordon's case, we will not weigh in on unresolved questions. Instead, we simply proceed to consider the merits of his claims, assuming without deciding that the limitations period and the doctrine of procedural default are overcome in this case. This approach is consistent with the following language of the Eighth Circuit Court of Appeals:

> In cases such as this, it might well be easier and more efficient to reach the merits than to go through the studied process required by the procedural default doctrine. Recent commentary points up the problems with the cause and prejudice standard:
>> [T]he decision tree for habeas review of defaulted claims is intricate and costly. . . . In essence, *Sykes* and *Strickland* require habeas lawyers and federal judges and magistrates to work through the equivalent of a law school exam every time a defendant tries to escape procedural default.

*McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (quoting Jeffries & Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus*, 57 U.Chi.L.Rev. 679, 690 (1990)).

**Ineffective Assistance of Counsel:** In order to prove ineffective assistance of counsel, Gordon must prove that (l) his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v.*

*Washington*, 466 U.S. 688 (l983); *Ryder v. Morris*, 752 F.2d 327, 33l (8th Cir. l985). Gordon bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Kellogg v. Scurr*, 74l F.2d l099, ll0l (8th Cir. l984); *Bell v. Lockhart*, 74l F.2d ll05, ll06 (8th Cir. l984). This presumption is created to "eliminate the distorting effects of hindsight," and recognizes that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689; *Ryder*, 752 F.2d at 33l.

In order to view the totality of the circumstances, we have carefully reviewed the transcript from the trial resulting in Gordon's conviction. The essence of the charge and the defense employed by Gordon at trial was straightforward. The shooting occurred in rural Fulton County. There was no dispute that Gordon shot three times from close range and killed his neighbor, Joe Clifton, on the afternoon of September 3, 2009. Clifton was in his truck when shot, accompanied by his two-year old son. Gordon was on foot, having driven his tractor to the area. There were no witnesses other than Gordon and Clifton's son. Gordon claimed he used his .45 Colt pistol because Clifton grabbed a rifle and was about to shoot Gordon. There was a great deal of testimony at trial about prior conflicts between Gordon and the Clifton family, which clearly established there was bad blood between Gordon and the Cliftons. Gordon's version of the events required the jury to believe Clifton was about to shoot Gordon, and the location of Clifton's rifle in the truck was a key trial issue. Clifton's wife, who was the first person on the scene after the shooting, found her husband slumped over the steering wheel. She testified he "always" carried his rifle with him in the truck, keeping it between the driver's seat and the console. (Tr. 309). She stated the rifle was in its usual location when she found her husband. After Ms. Clifton called 9-1-1, first responder Darrell Zimmer was the next person on the scene. Zimmer testified that Clifton's rifle was wedged between the console and the passenger seat. (Tr. 333-334). Ms. Clifton's brother-in-law, Doug Johnson, arrived shortly thereafter. Johnson noticed Clifton's rifle was between the driver's seat and the console, "where Joe kept it all the time." (Tr. 327). Arkansas State Police Investigator Todd Shaw

arrived a few hours later and took photos of the crime scene. He photographed Clifton's rifle lying on the passenger seat, where it was located when he arrived. (Tr. 370).

In addition to the rifle's location, Gordon's behavior in the immediate aftermath of the shooting was pivotal to the convictions. When interviewed after the shooting, and at trial, Gordon never wavered from claiming self-defense. His behavior after the shooting, however, was inconsistent with self-defense. He testified at trial that he saw Clifton's two-year old child after the shooting but did not call 9-1-1. He also stated he picked up some of the shell casings, disposed of his weapon, and went home. This portion of the trial transcript highlights Gordon's problematic defense:

> Prosecutor: Why did you pick up the shell casings and take the gun home and hide it if it was self defense?
>
> Gordon: I always was taught to pick up shell casings. And I always went back to base camp.
>
> Prosecutor: And with regard to hiding the murder weapon?
>
> Gordon: I did that to keep – well, actually I didn't want it. I just threw it away. I didn't want it anymore.
>
> Prosecutor: I thought you said you threw it under a rock?
>
> Gordon: Yes, I did. I kicked dirt on it.
>
> Prosecutor: So, you hide it? Put it under a rock and kicked dirt on it. You hide it; correct?
>
> Gordon: Yes, ma'am.
>
> Prosecutor: Why would you do that if it was self defense?
>
> Gordon: It was self defense. And I do not know why I did it.
>
> Prosecutor: Would you agree that that is kind of indicative of guilt?
>
> Gordon: No, ma'am.
>
> Prosecutor: So, you agree, you did pick up the shell casings?

    Gordon: I believe I did, ma'am.

(Tr. 691-692). In addition to Gordon's testimony about his actions after he shot Clifton, Derrick Brown testified he observed Gordon sitting on his porch with a drink in hand as Brown was driving to the crime scene. (Tr. 349). Another neighbor, Terry Batterton, heard sirens and went to Gordon's house, worried that Gordon was injured. Batterton stated that Gordon was sitting on the carport and offered Batterton a drink. Batterton accepted the offer, and was still at the Gordon house when officers took Gordon into custody. During their time together, Gordon did not tell Batterton why ambulances were in the neighborhood. (Tr. 356-357).

    Arkansas State Police Investigator Todd Shaw's recorded interview with Gordon was played at the trial. In that interview, Gordon said Clifton reached for his rifle and Gordon shot first. Gordon described the pistol he used, but was evasive when Shaw asked about the gun's whereabouts. "It's put up" was Gordon's reply. When pressed for a better explanation, Gordon again said, "It's put up." (Tr. 417). The gun was never recovered.

    Beginning with his opening statement, Gordon's trial attorney, Froelich, focused on the self defense claim, with an added emphasis on Gordon's personal history as a Vietnam veteran. The theory offered was Gordon "went into soldier mode" when Clifton raised his rifle to shoot him. (Tr. 240) (from counsel's opening statement). The theory was reinforced when Gordon testified that he "reverted back to my training" and when he described his feelings about not calling 9-1-1:

> Gordon: "Well, sir, I'm very upset about that. I should have. I really should have. But that wasn't what I was trained to do. And I just – I was really torn between, you know, still being a soldier and what they do here in the United States. I was real upset about it. You know, I didn't know what to do. I should have called 9-1-1."

(Tr. 646, 651). Ultimately, the jury did not accept Gordon's version of the events of September 3, 2009.

    The first task when considering a claim of ineffective assistance of counsel is to determine if Gordon's attorneys acted unreasonably. Liberally construing the petition, Gordon alleges the

8

following errors by counsel:

    (A) Attorney Rosenzweig failed to investigate any of Gordon's allegations and failed to advise Gordon and his wife of their rights;

    (B) Attorney Froelich refused to investigate Gordon's claims and allowed Gordon's wife's testimony from the first trial to be read into evidence in the second trial;

    (C) Attorney Froelich was on pain medication, was incoherent, and "even dozed off" (Petition, page 16);

    (D) Attorney Lambert, hired to pursue a direct appeal, refused to communicate with Gordon in any way, and did no investigation into any of the claims raised by Gordon;

    (E) The Potter Law Firm, hired to file a Rule 37 petition, allowed the time to pass so that Gordon was unable to seek Rule 37 relief; and

    (F) Attorney Johnson, hired to file a petition for error coram nobis and a request to file a belated Rule 37 petition, allowed the time to expire for filing a federal habeas corpus petition.

    With respect to claims (A) through (D), Gordon has not demonstrated unreasonable acts or omissions by these attorneys. As to claim (A), Jeff Rosenzweig was one of two attorneys who represented Gordon in his first trial on these charges. The trial ended in a hung jury. As noted, most of the allegations against the trial attorneys, including Rosenzweig, are general in nature. One specific allegation is attorney error by Rosenzweig in allowing Gordon's wife to testify at the first trial, and error by Froelich in allowing this testimony to be read into evidence at the second trial, due to her unavailability as a result of receiving cancer treatment in Louisiana.

    The trial transcript shows that attorney Rosenzweig and co-counsel James Petty filed a motion to exclude evidence encompassed by the marital privilege. However, at a hearing, the parties agreed that Gordon had waived the claim of spousal privilege, and the trial court so held. (Tr. 51). Gordon fails to offer evidence that the spousal privilege was not waived, or that Rosenzweig acted unreasonably in representing to the trial court that the privilege was waived. Gordon also fails to offer support for his general allegations that Rosenzweig acted unreasonably in his representation

of Gordon. General allegations of incompetence are not sufficient to establish ineffective assistance of counsel. Additionally, the Court finds no error in the trial court allowing the wife's prior testimony to be introduced due to her unavailability. There is no merit to this claim.

The transcript from the second trial likewise does not support the additional allegations against trial counsel Froelich. To the contrary, the trial transcript shows Froelich was engaged, often objecting, and often receiving favorable rulings. The trial judge chided Froelich for his lengthy opening statement, but a verbose opening statement is not evidence of ineffective assistance of counsel. The defense of self-defense, or justification, pursued by the trial attorney was plausible. Under the circumstances, it is difficult to imagine another line of defense. Attorney Froelich was persistent in his attempts to show Clifton may have raised his rifle at Gordon, emphasizing the photograph taken by Todd Shaw showing the rifle in the passenger's seat, and questioning Dr. Erickson, the forensic pathologist, to suggest Clifton's arm may have been raised when he was shot. In summary, although the defense was unsuccessful, we find no unreasonable behavior on the part of trial attorney Froelich. Similarly, Gordon establishes no unreasonable behavior on the part of his counsel on direct appeal, Craig Lambert[3].

Regarding the allegations against the Potter Law Firm and Johnson, we will assume for purposes of our analysis that the first prong of the *Strickland* test is satisfied. The second prong, however, requires that Gordon demonstrate he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. Gordon does not satisfy this requirement. There is no showing that the verdicts would have been overturned if a timely Rule 37, petition for writ of error coram nobis, or timely federal habeas petition had been filed. Gordon does not point to a winning claim which could have been raised in any postconviction forum. The verdicts were amply supported by the evidence adduced at trial. As previously noted, the primary evidence against Gordon was the location of the rifle and Gordon's

---

[3]Even if we were to generously assume some error on the part of Rosenzweig, Froelich, or Lambert, there is no showing that such an error prejudiced Gordon. The strong evidence of Gordon's guilt, not the acts or omissions of these attorneys, insured the verdict against him.

behavior in the moments after the shooting. His complaints advanced to show ineffective assistance of counsel centers around general assertions and secondary evidence, such as whether Gordon was allowed to use the phone at the county jail and whether his mail was confiscated. (Petition, page 15).

In summary, Gordon falls far short of demonstrating he received ineffective assistance of counsel from the attorneys he employed for his trials and direct appeal. And as to the claims that he received ineffective assistance of counsel from the attorneys he hired to seek post-conviction relief, Gordon does not show the prejudice required under the *Strickland* formula.

As a result, we recommend the petition be dismissed with prejudice and the relief requested be denied.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this 15th day of September, 2015.

_____
UNITED STATES MAGISTRATE JUDGE